**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

WENDY J. DESPEIGNES,

    Plaintiff,

vs.

FIGUEROA et al.,

    Defendants.

3:15-cv-00596-RCJ-VPC

**ORDER**

The remaining claim in this excessive force case arises out of an incident at the Washoe County Detention Facility where two guards allegedly used excessive force to put Plaintiff's arm back through the food slot of his cell, pulling and twisting his arm and causing his head to hit the door. Pending before the Court is the Magistrate Judge's Report & Recommendation ("R&R") on Defendants' motion for summary judgment. The Magistrate Judge recommends denying the motion. The Court respectfully disagrees on the issue of qualified immunity and will grant the motion.

The Magistrate Judge reasons in part that the time stamp on the video of the incident indicates that the events depicted therein occurred between 5:36 and 6:00 a.m., but Deputy Salcedo attests that the complained-of use of force did not occur until sometime after he arrived at the cell to aid Deputy Figueroa at 6:05 a.m, (Salcedo Decl. ¶¶ 6–13), so there therefore remains a genuine issue of material fact as to whether some excessive force occurred after the events depicted in the video. But a reasonable jury could not accept that version of events—i.e., that Deputies Figueroa and Salcedo scuffled with Plaintiff between 5:36 and 6:00 a.m. as depicted in the video and then returned to scuffle with him again more harshly after the video

1

ended—based on the record as a whole. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). Deputy Salcedo attests that he did not arrive until 6:05 a.m., but the video shows two guards attempting to push Plaintiff's arm back into the food slot for approximately a minute beginning at the 4:05 mark on the video (approximately 5:40 to 5:41 a.m.), and Plaintiff has not provided evidence that Deputies Figueroa and Salcedo wrestled with him more than once. Additionally, Deputy Salcedo has submitted a second declaration in response to the R&R, attesting that he did not review the video before his first declaration, and that either his original recollection of the time he arrived at Plaintiff's cell or the time stamp on the video must be incorrect, because the video depicts the incident at issue. (*See* Salcedo Decl. ¶¶ 2–3, ECF No. 20-2). Also, although the Magistrate Judge refers to Plaintiff's "exhibit of an affidavit testimony" and "affidavit of testimony" as "evidence" and "sworn declarations," they are neither sworn nor signed under penalty of perjury. They are therefore neither affidavits nor declarations, and they are not admissible as evidence. In any case, Plaintiff does not therein claim more than one incident involving force by Deputies Figueroa and Salcedo. The Complaint itself is evidence because it is verified (although it is not labeled as such), but the Complaint does not indicate that more than one incident involving force by Deputies Figueroa and Salcedo occurred, either. There is therefore no issue of material fact that the only incident at issue is the one depicted in the video, and the only evidence adduced by Plaintiff regarding the extent of force use is:

> [Deputy Figueroa] hit me with the food slot by closing my arm into it. Then he put more excessive force towards it. When he could not suc[c]eed[], he call[ed] Dpt. Salc[e]do. Both deputies were pulling my arm towards out [sic] the food slot[] twisting my arm and pulling me out towards them, and my head[] was hitting the metal door.

(Compl. 3, ECF No. 5). He alleges bruises and a "dislocated . . . shoulder," (*see id.* 3–4), although there is no evidence of any injury to his shoulder or that he required medical treatment for any of his injuries, (*see* Mueller Decl., ECF No. 13-3).

The question remains whether a reasonable jury could find the incident to have constituted excessive force based on the video, the Complaint, and Defendants' declarations, or, if the Court chooses to examine qualified immunity first, whether it would have been clear to a reasonable officer in Defendants' position that the force used was excessive. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Officers can have a reasonable, but mistaken, belief about the facts or about what the law requires in a certain situation and still be entitled to qualified immunity. *Saucier*, 533 U.S. at 205. Liability does not "require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The Supreme Court has:

> repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality. The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.

*Id.* at 742. The Court therefore cannot, even assuming Plaintiff's verified allegations are true, adopt the Magistrate Judge's recommendation to deny qualified immunity simply because "[t]he *general law* concerning excessive force was clearly established at the time of the alleged events." (R&R 8:22–23, ECF No. 19 (emphasis added)).

The general test for excessive force is, as the Magistrate Judge notes, "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to

3

cause harm." *Hudson v. McMillan*, 503 U.S. 1, 6.  But a denial of qualified immunity requires mandatory authority existing at the time of the alleged violation made it undebatable that the general constitutional standard was violated in that particular case.  The question of qualified immunity is "whether it was clearly established that the [Constitution] prohibited the officer's conduct *in the situation . . . confronted*." *Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015) (internal quotation marks omitted; emphasis added).  "Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that [i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Id.* at 308 (alteration in original; internal quotation marks and citation omitted).  In other words, the test under qualified immunity is not whether a reasonable jury could find the officer violated a constitutional standard based on disputed evidence (a mixed question of law and fact) but whether a reasonable jury could find pure facts that if accepted by the court as true ex ante would make it clear that the officer violated the constitutional standard based on then-existing mandatory authority involving similar circumstances.  Qualified immunity means that some defendants may be shielded from liability despite having used constitutionally excessive force.  In the context of the present summary judgment motion, it means that Defendants may be shielded from liability even if there is a genuine issue of material fact about whether they used constitutionally excessive force.

Although it may be argued that the force used in this case was more than what was minimally necessary to put Plaintiff's arm back into his cell and close the food slot, doing so in order to maintain discipline was a legitimate penological goal.  The question is whether it is beyond debate that pulling and twisting Plaintiff's arm into some sort of arm bar, causing Plaintiff to strike his head against the door (according to Plaintiff's verified allegations) in an

4

attempt to shove his arm back into the cell when he refused to do so on his own was excessive. Plaintiff admits in the Complaint that he refused to pull his arm back in, because he notes that Deputy Figueroa called Deputy Salcedo for assistance because he "could not succeed" in putting Plaintiff's arm back into his cell. And the video is clear that Plaintiff refused to put his arm back into his cell for about 3 minutes before Deputies Figueroa and Salcedo attempted to force it back in, and then for at least 19 more minutes thereafter.

The Court needn't address the Magistrate Judge's opinion that the question of excessive force is unclear. It is enough that the Court has been unable to find any Supreme Court or Ninth Circuit cases concerning the constitutional limitations on force that may be used to obtain compliance in a situation where a prisoner refuses to remove his arm from his food slot or some similar or analogous situation. Especially in light of the longstanding rule that "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security," *Bell v. Wolfish*, 441 U.S. 520, 547 (1979), the Court cannot say that it was "beyond debate" that pulling and twisting Plaintiff's arm and causing his head to strike the door in order to force Plaintiff's arm back through the food slot when he refused to do so himself was constitutionally excessive.

Qualified immunity is a form of "double deference" in the excessive force context. *Weinmann v. McClone*, 787 F.3d 444, 450 (7th Cir. 2015) (Wood, C.J.) (noting that the underlying reasonableness standard excuses reasonable mistakes of fact, and the qualified immunity standard excuses reasonable mistakes of law). In light of *Bell*, qualified immunity in the prison context might therefore be said to be a form of "triple deference," at least in excessive force cases. Although the deference is of course not unlimited, courts defer to prison officials

when they take action to maintain discipline.  This affects the question of the reasonableness of force used in the context of an excessive force claim.  When assessing qualified immunity in this context, a court asks whether in light of that deference it was beyond debate based on then-existing mandatory authority that prison officials exceeded that deference.  The Court cannot so rule in this case.

## CONCLUSION

IT IS HEREBY ORDERED that the Report and Recommendation (ECF No. 19) is REJECTED, and the Motion for Summary Judgment (ECF No. 13) is GRANTED.

IT IS FURTHER ORDERED that the Clerk shall enter judgment and close the case.

IT IS SO ORDERED.

Dated this 1st day of May, 2017.

_____
ROBERT C. JONES
United States District Judge